**In re ORION PICTURES CORP., et al., Debtors.**

**ORION PICTURES CORP., Plaintiff,**

v.

**SHOWTIME NETWORKS, INC., f/k/a Showtime/The Movie Channel, Defendant.**

Nos. 91–B–15635 (BRL), 92 Civ. 2247 (JFK). Adv. No. 91–8737A.

United States District Court, S.D. New York.

April 13, 1992.

Willkie Farr & Gallagher, New York City (Francis J. Menton, Jr., Alexandra Margolis, Gregory M. Cooke, of counsel), for debtors/plaintiff.

Shearman & Sterling, New York City (R. Paul Wickes, Frederick Davis, Brian Chevlin, Donna Bogdanski, of counsel), for defendant.

## OPINION AND ORDER

KEENAN, District Judge:

Showtime Networks, Inc. ("Showtime") has moved for an order under 28 U.S.C. § 157(d) and Bankruptcy Rule 5011(a) withdrawing the reference of the adversary proceeding between Debtor Orion Pictures Corporation ("Orion") and Showtime from bankruptcy court. For the reasons that follow, Showtime's motion is denied.

## BACKGROUND

On December 11, 1991, Orion filed a voluntary petition for reorganization under Chapter 11 in the Southern District of New York. The case was referred to the Bankruptcy Court pursuant to the standing order of reference, 28 U.S.C. §§ 157–58, and is currently before Chief Judge Lifland. Orion continues to operate and manage its properties as debtor in possession under 11 U.S.C. §§ 1107 and 1108.

On March 20, 1992, Orion initiated an "adversary proceeding" against Showtime in bankruptcy court. Orion alleges that Showtime has anticipatorily breached a licensing agreement ("Agreement") dated August 1, 1986. The initial complaint sought several forms of relief, including an order allowing assumption of the Agreement under section 365 of the Bankruptcy Code, an order of specific performance that Showtime must pay Orion the amounts provided under the Agreement, and a declaration that Showtime was estopped from invoking the "key-man" clause of the Agreement. As an alternative form of relief, Orion requested $77 million in damages. Simultaneously with the filing of the complaint, Orion filed a motion to assume the agreement. On April 2, 1992, Orion filed an amended complaint that seeks an award of specific performance and drops the demand for damages.

Upon filing the initial complaint on March 20, Orion moved ex parte to expedite discovery and set an accelerated trial date in the adversary proceeding. Chief Judge Lifland signed an order adopting Orion's proposed schedule, requiring Showtime to answer and serve all document requests by April 3, to produce all requested documents by April 10, and setting an April 23 discovery cutoff and a May 14 trial date. *See* Certification of H. Gwen Marcus ("Marcus Cert.") in Support of Showtime's Motion for Withdrawal of the Reference, Exh. C. On March 30, 1992, Showtime asked Judge Lifland to alter the ex parte order he had entered setting the pre-trial schedule. He denied the request. Showtime thereafter filed with this Court its motion to withdraw the reference.

## DISCUSSION

A motion for withdrawal of a case or proceeding is brought in district court. *See* Bankruptcy Rule 5011(a), 11 U.S.C. This Court may withdraw the adversary pro-

ceeding from the bankruptcy court "for cause shown." 28 U.S.C. § 157(d).

The United States District Court has exclusive and original jurisdiction over all cases and civil proceedings arising under title 11 of the Bankruptcy Act. 28 U.S.C. § 1334. Cases or proceedings arising under title 11 are referred automatically to the United States Bankruptcy Court. 28 U.S.C. § 157(a). 28 U.S.C. § 157 defines the parameter of the bankruptcy courts' jurisdiction to hear and adjudicate cases and proceedings referred to them by district courts. Section 157(b)(1) provides that

> bankruptcy judges may hear and determine all cases under Title 11 and all core proceedings under Title 11, or arising in a case under Title 11, and may enter appropriate orders and judgments....

Core proceedings are matters that govern the administration of the debtor's estate. A non-exhaustive list of core proceedings is set forth at section 157(b)(2); of particular relevance in this case are subsections (A) and (O), which Orion claims apply to the instant adversary proceeding. Subsection (A) provides that "matters concerning the administration of the estate" are core, and subsection (O) provides that "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship" are also core.

A non-core proceeding, in contrast, is defined as a "proceeding that is not a core proceeding but that is otherwise related to a case under Title 11." 28 U.S.C. § 157(c)(1). In non-core proceedings, the bankruptcy judge is required to submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment is entered by the district judge after de novo review of those findings. 28 U.S.C. § 157(c)(1).

Section 157(d) permits the district court to withdraw its reference of a bankruptcy petition or any case or proceeding related to the petition as follows:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

■ Showtime proceeds under the first sentence of section 157(d), which provides for permissive withdrawal of a case or proceeding for "cause." Cause is not defined in the Act. In evaluating motions to withdraw a reference for cause, courts consider two principal factors in determining whether cause exists. The first factor is the nature of the proceeding, i.e. whether it is core or non-core; the second factor is judicial economy. *See Acolyte Elec. Corp. v. New York,* 69 B.R. 155, 166 (Bankr. E.D.N.Y.1986).

### A. Nature of the Proceeding

Showtime asserts that cause in this case is two-fold. First, it asserts that withdrawal is necessary because the adversary proceeding is a non-core proceeding in which they are entitled to a jury. Second, it argues that Judge Lifland's "abusive" ex parte scheduling order "raises serious doubt about Showtime's ability to receive a fair hearing in the Bankruptcy Court." Memorandum of Law in Support of Defendant Showtime Networks Inc.'s Motion for Withdrawal of the Reference ("Showtime Mem.") at 5. The Court is not persuaded by either contention.

■ Whether Orion's action against Showtime is a core proceeding as defined in 28 U.S.C. § 157(b)(2) is a determination to be made by the Court. *See Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, Inc.,* 107 B.R. 34, 39–40 (D.Del.1989); *In re Luis Electrical Contracting Corp.,* 100 B.R. 155, 156 (E.D.N.Y.1989); *In re Leedy Mortgage Co.,* 62 B.R. 303, 306 (E.D.Pa.1986). The Court finds that the adversary proceeding in this case is a core proceeding within the meaning of section 157(b)(2)(A) ("matters concerning the ad-

ministration of the estate" are core proceedings).

As Orion concedes, the question of whether collection by a debtor's estate of contract claims owing to it is core or non-core has not met with uniform treatment. Nonetheless, this Court finds persuasive the reasoning of Chief Judge Charles Brieant's decision in *In re Leco Enterprises, Inc.*, 125 B.R. 385, 389 (S.D.N.Y.1991). In *Leco*, Judge Brieant found that collection of a pre-petition account receivable concerned "the administration and liquidation of an asset of the Debtor's estate" and therefore fell within the plain meaning of 28 U.S.C. §§ 157(b)(2)(A) and (O). As Judge Brieant explained, the adversary proceeding

> involves a claim for $101,098.99 allegedly owed to the Debtor which if collected would inure to the benefit of the estate or the creditors of the estate. Accordingly, the prompt resolution of this adversary proceeding is essential to the administration of the estate and the adjustment of the debtor-creditor relationships since these funds are inextricably linked to the liquidation of the estate.

125 B.R. 385, 389–90 (S.D.N.Y.1991). This reasoning applies with equal, if not greater, force in the instant case, which involves a potential debt of $77 million, not $101,000.00. Orion's recovery of a sum that large could do nothing but affect the administration and liquidation of the estate. *Cf.* Affidavit of Lawrence Bernstein in Opposition to Showtime's Motion to Withdraw the Reference ("I believe that successful reorganization of Orion requires resolution of the Showtime dispute."); Affidavit of Peter Nolan In Opposition to Showtime's Motion to Withdraw the Reference at ¶¶ 2–4. Accordingly, this adversary proceeding is a core proceeding within the plain meaning of 28 U.S.C. § 157(b)(2)(A).

Whether Orion complied with a contractual condition in the Orion/Showtime Agreement, and therefore whether the Agreement remains valid, is the issue to be determined in the adversary proceeding. It is also an issue that must be determined before the bankruptcy court can decide Orion's motion to assume.[1] *See* Letter of Francis J. Menton, Jr., April 8, 1992 ("resolution of the issues regarding Orion's compliance with a contractual condition is necessary to determining Orion's motion to assume."); *see also* Letter of R. Paul Wickes, April 10, 1992 ("Debtor may be right that the adversary proceeding is a "precursor to determination of the motion to assume.").

The determination of the dispute over the status of the Agreement is therefore a necessary part of the bankruptcy court's determination of the motion to assume the Agreement, and thus "it is an integral part of the administration of the case. As such, it is part of a core proceeding." *In re Nexus Communications, Inc.*, 55 B.R. 596, 598 (Bankr.E.D.N.C.1985).

### B. Judicial Economy

The determination that this is a core proceeding is one of the two relevant factors in evaluating Showtime's motion to withdraw the reference. Discretionary withdrawal of a reference for cause also includes a consideration of judicial economy. In this case, judicial economy also weighs against withdrawing the reference. As Orion observes, "[t]he adversary proceeding was commenced as supplemental to the motion to assume in compliance with technical procedural requirements." Menton Letter at 4. The motion to assume will be heard by the bankruptcy court in connection with the overall administration of Orion's reorganization efforts under Chapter 11. Because the adversary proceeding and the motion to assume are intertwined, and because the assumption motion will be heard by the bankruptcy court, leaving the adversary proceeding in bankruptcy court would promote judicial economy. To withdraw the reference would be to derail the orderly and efficient administration of the debtor's Chapter 11 proceeding.

---

1. That motion was brought simultaneously with the filing of the complaint in bankruptcy court, and is scheduled to be heard by Judge Lifland on the day set for trial of the adversary proceeding.

■ Showtime's argument that Judge Lifland's "abusive" scheduling order constitutes cause for withdrawing the reference finds no support in the cases. Citing not a single authority for its proposition, Showtime only argues that it would be prejudiced if it were forced to proceed in bankruptcy court. This Court does not agree that it would suffer any prejudice. Further, as Orion correctly observes, the proper avenue for relief from such an order is to seek leave to appeal the order under 28 U.S.C. § 158 and Bankruptcy Rule 8001. Showtime's moving to withdraw the reference is essentially an attempt to make an end-run around Judge Lifland's discovery order. This tactic is inappropriate and will not be sanctioned.

### CONCLUSION

For the reasons set forth above, Showtime's motion for withdrawal of the reference is denied. This action is ordered removed from the Court's active docket.

SO ORDERED.