■ GIBSON & CUSHMAN DREDGING CORP., Respondent, v HALLIBURTON COMPANY, INC. (HORN CONSTRUCTION DIVISION), Appellant. (Action No. 1.) MICHAEL NICHOLSON et al., Appellants, v GIBSON & CUSHMAN DREDGING CORP., Respondent. (Action No. 2.) — In action No. 1, to recover damages for breach of contract, the defendant Horn Construction Division of the Halliburton Company, Inc., appeals from an order of the Supreme Court, Suffolk County (Orgera, J.), dated January 10, 1984, which denied its motion to dismiss the complaint upon the ground that a defense was founded on documentary evidence and the ground that it had tendered payment, and granted the cross motion of the plaintiff for consolidation of action No. 1 with action No. 2 which was then pending in the Supreme Court, Kings County.

In action No. 2, to recover attorneys' fees, plaintiffs Michael Nicholson and Diana Long Nicholson, doing business as Corner, Finn, Nicholson & Charles, appeal from an order of the Supreme Court, Kings County (Vinik, J.), dated February 10, 1984, which denied their motion, *inter alia,* for leave to deposit money into court and granted the cross motion of the defendant Gibson & Cushman Dredging Corp. to dismiss the complaint in action No. 2.

Order dated February 10, 1984, affirmed.

Appeal from the order dated January 10, 1984, dismissed as academic in light of our decision with respect to the order dated February 10, 1984.

Gibson & Cushman Dredging Corp. is awarded one bill of costs to be taxed by the Clerk of the Supreme Court, Kings County, payable by Michael Nicholson and Diana Long Nicholson.

Michael Nicholson and Diana Long Nicholson, a partnership doing business as Corner, Finn, Nicholson & Charles (the Nicholsons) are attorneys who represented a general contractor, the Horn Construction Company (Horn) now a division of Halliburton Company, Inc., in negotiations with, and in litigation against, the Long Island Lighting Company (LILCO) arising out of the construction of the Shoreham nuclear power plant. Gibson & Cushman Dredging Corp. (Gibson) performed work on the Shoreham plant as a subcontractor of Horn under its prime contract with LILCO. Delays in construction were encountered and unanticipated expenses were incurred giving rise to a dispute between Gibson and Horn. Pursuant to the terms of the subcontract, Gibson demanded arbitration of certain claims against Horn based upon the alleged additional expenses incurred. The dispute was resolved, however, when Horn and Gibson entered into a so-called "liquidating agreement" under which it was agreed that Horn would prosecute both parties' claims against LILCO, the party perceived as primarily liable for the delay. Horn acknowledged liability to Gibson under the agreement and obligated itself to pay Gibson a specified sum out of any recovery against LILCO in complete satisfaction of the claims Gibson had previously made against Horn. Further, pursuant to the agreement, Horn was permitted sole discretion in determining when and in what manner it would proceed against LILCO.

*There* was a preexisting general agreement between Horn and the Nicholsons' law firm with respect to their compensation, which provided for the payment by Horn of a 20% contingent attorneys' fee. There was, however, no agreement ever made

with respect to the payment of fees to the Nicholsons by Gibson. The liquidating agreement, moreover, states, in pertinent part, that "[e]ach party hereto shall pay all fees and costs for its respective attorneys".

Pursuant to the agreement, the Nicholsons entered into negotiations with LILCO which were unsuccessful and subsequently, they prepared and prosecuted an action in the Supreme Court, Nassau County, against LILCO entitled, "Horn Construction Company, Inc. v Long Island Lighting Company". Notably, in that action Horn was the sole plaintiff and the Nicholsons' law firm was its attorney of record. Shortly thereafter, the suit was settled for $653,245. Payment of that sum was made to the Nicholsons as the attorneys for Horn. Gibson's share under the liquidating agreement was $85,889.40. On or about September 4, 1983, the Nicholsons informed Gibson that a settlement had been reached but indicated that 20% of Gibson's share of the settlement, $17,177.88, would be withheld as an attorneys' fee. Gibson rejected the Nicholsons' contention that any fee was owing. The Nicholsons thereafter placed Gibson's share into escrow and instituted action No. 2 against the defendants in the Supreme Court, Kings County, claiming their entitlement to the fee. They made a motion for an order permitting them to deposit either all of Gibson's share into court or the portion of its share claimed to represent the fee. Meanwhile, Gibson instituted action No. 1 in the Supreme Court, Suffolk County, contending that Horn had breached the liquidating agreement by failing to pay over to Gibson its share of the settlement proceeds. On or about October 16, 1983, Horn moved for an order dismissing action No. 1 upon the ground, *inter alia,* that a defense was founded on documentary evidence. By order dated January 10, 1984, the motion was denied and Gibson's cross motion requesting consolidation of action No. 2 with action No. 1 in Suffolk County was granted. The Nicholsons' motion in action No. 2 for leave to deposit money into court and Gibson's cross motion to dismiss that action were still pending at this time. By order dated February 10, 1984, Justice Vinik, in Kings County, issued a memorandum decision: (1) dismissing action No. 2, (2) directing that the Nicholsons, the plaintiffs therein, pay to defendant its entire gross share of the recovery from LILCO, and (3) suggesting that action No. 1 be discontinued as academic in light of the denial of fees. The parties agree, in substance, that an affirmance of Justice Vinik's order dismissing the Kings County suit would render the Suffolk County suit academic. We affirm the order dated February 10, 1984, and made in action No. 2.

The Nicholsons contend that despite the absence of an agreement to represent, they nevertheless are entitled to recover attorneys' fees from Gibson, which was neither a client nor a party to the extant contingent fee arrangement under which the fees are sought. As attorneys, the Nicholsons must bear the burden of proving that any alleged fee arrangement is fully comprehended by the party sought to be charged (*Cohen v Ryan, 34 AD2d 789, 790*). Moreover, the fact that Gibson may have benefited from their legal services does not justify imposition of a fee. It is well settled that attorneys may not recover legal fees from persons other than their client merely because such other persons might have benefited from their services (*Builders Affiliates v North Riv. Ins. Co., 91 AD2d 360, 362; Matter of Linder, 17 AD2d 949, 950; Armstrong v I. T. T. S. Corp., 10 AD2d 711*). Nor is there sufficient evidence in the record to support the contention that an implied agreement arose obligating Gibson to pay a fee. Gibson did not impliedly consent to the Nicholsons acting as its counsel or as attorney of record in the suit against LILCO. The retention of counsel was for Horn to determine: it retained exclusive control over the direction of the suit, and under the liquidating agreement, it was permitted sole discretion in determining when and in what manner it would proceed against LILCO. Moreover, the contention that an implied agreement arose is eroded by the fact that there was already in existence an express agreement between Horn and the Nicholsons with regard to the latter's fee (*cf. A & S Welding & Boiler Repair v Seigel, 93 AD2d 712*). Nor is there anything in the record to sustain the contention that Gibson "knew" that the Nicholsons expected to be compensated by it based upon the contingent fee arrangement existing between them and Horn. In any event, the liquidating agreement itself belies such a contention since it clearly states that each party shall pay all the fees and costs for its "respective attorneys".

Finally, we note that the common fund doctrine is inapplicable. The benefit conferred was not attributable to the legal services provided but rather to an express agreement between Horn and Gibson regarding the distribution of the settlement recovered. The services rendered by the Nicholsons in the suit against LILCO played no role in creating Gibson's status under the liquidating agreement.

We have reviewed the Nicholsons' remaining contentions and find them to be without merit. Thompson, J. P., Brown, Niehoff and Lawrence, JJ., concur.